**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

| | | |
|---|---|---|
| **JAMMIE COLEMAN,** | : | |
| | : | |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | **5:05-CV-438 (WDO)** |
| | : | |
| **PEACH COUNTY, GEORGIA, et al.,** | : | |
| | : | |
| **Defendants** | : | |

## ORDER

While Plaintiff was incarcerated in the Peach County Law Enforcement Center ("LEC"), he was bitten by a spider, presumably a brown recluse.  Plaintiff claims that the site of the spider bite has not completely healed and still causes him occasional pain.  Plaintiff sued the county, the Sheriff, the Sheriff's Department and the LEC alleging: (1) deliberate indifference to his medical needs in violation of the Eighth Amendment; (2) violation of due process under the Fifth and Fourteenth Amendments by depriving him of medical treatment; (3) negligent hiring, retention, training and supervision of employees with willful and wanton propensities to deny inmates of medical care; (4) negligence; and (5) intentional infliction of emotional distress.  Plaintiff seeks compensatory damages, punitive damages and attorney fees.  Defendants have moved for summary judgment on all claims.  The following facts are those alleged by the Defendants.  Plaintiff, who is represented by counsel, filed no response to the Defendants' statement of facts and no response to the motion for summary judgment.

### *FACTUAL AND PROCEDURAL BACKGROUND*

1

Plaintiff was bitten by a spider three and a half months before being incarcerated in the Peach County LEC.  The doctor who treated him at that time informed him the bite would take six to eight months to heal, but he did not take the medication prescribed to him or even fill the prescription.  He claimed he was bitten by a second spider once he was in the LEC, in the same spot as the first spider bite.

On July 1, 2004, Plaintiff was placed in the Peach County LEC to serve a sentence for a probation violation.  The LEC houses inmates for the Peach County Sheriff's Office, the Byron Police Department and the Fort Valley Police Department.  Plaintiff was booked into the LEC as a Byron Police Department prisoner.

Plaintiff claims that on the evening of July 2, 2004 he felt a burning on his left buttock while he was taking a shower.  When he returned to the dayroom, Plaintiff buzzed for an officer and reported he had a sharp pain and a burning sensation in his left buttock.  Plaintiff claims he was told someone would be sent to help him but no one was sent.

Detention officers at the Peach County LEC are trained in first aid and CPR, but there is no medical staff on premises.  When an inmate needs medical attention, he fills out an inmate request form and submits it to an officer who then submits it to a shift supervisor.  If a prisoner makes a verbal request for medical attention, the request is put in writing either on an inmate request form or in the logbook.  The shift supervisor determines whether the situation calls for emergency or non-emergency care.  In an emergency, the detention officers will transport the prisoner to the emergency room or call EMS.  For non-emergency care for prisoners, either the supervisor or a detention officer will schedule a doctor's appointment.

2

For a Fort Valley or Byron Police Department prisoner, Fort Valley or Byron is responsible for scheduling the medical appointment and transporting the inmate after being told of the request.  If possible, a doctor's appointment is scheduled after the first request for medical care is submitted; however, if a request is made over a weekend, an inmate may submit multiple requests before an appointment can be arranged.  Although inmates are instructed to not submit more than two request forms for any one sickness or episode, multiple forms are nevertheless accepted and retained in the inmate's file.  Inmates can also request and submit grievance forms when they need medical care.  The grievance forms are submitted to the shift supervisor or grievance officer and placed in the inmate's file once resolved.

With respect to Plaintiff's spider bite while he was in the LEC, Plaintiff thinks he asked for and received an inmate request form on Saturday, July 3, 2004, but he did not tell any officer the specific reason for his request.  July 4th fell on a Sunday in 2004 so the holiday was observed on Monday, July 5, 2004.  Plaintiff thinks he submitted a request form on July 3, 2004 but there is no record of any such form.  After allegedly receiving no response to the July 3rd request, Plaintiff filled out another one dating it July 5, 2004 and stating he had been bitten by a spider.  The request form dated July 5, 2004 indicates that Plaintiff noticed a bite on July 3, 2004 and that he was reporting it on July 6, 2004.  The July 5, 2004 request does not indicate that Plaintiff submitted any previous requests.  Rather, he stated that he had been bitten again, had noticed it on the 3rd and the bite had swollen to the

3

size of a silver dollar.[1]  The request form indicates it was not submitted to an officer until 8:30 p.m. on July 6, 2004.  Plaintiff does not remember if he received a response to the July 6th request but does remember that Officer Joiner came to his cell and checked on him sometime after he submitted this request.  Officer Joiner could not say whether he was working the night shift of July 6, 2004 (from 7:00 p.m. to 7:00 a.m.) or the day shift of July 7, 2004 (from 7:00 a.m. to 7:00 p.m.) and neither can Plaintiff.[2]  When Officer Joiner checked on Plaintiff, Plaintiff's left buttock was red, swollen and the bite area contained pus. Plaintiff was complaining of pain and Officer Joiner told his supervisor that Plaintiff needed medical attention.  Plaintiff claims that, after this visit, he filled out a grievance form and turned it in to Officer Joiner but Officer Joiner does not remember receiving a grievance form from Plaintiff and there is no evidence any such grievance form exists.  Plaintiff submitted another request form on July 7, 2004 at 6:11 p.m.  At 6:18 p.m., the supervisor who received the form obtained authorization from the Byron Police Department to take Plaintiff to the emergency room that night instead of waiting for a doctor's appointment.  At 1:05 a.m. on July 8, 2004, Plaintiff was treated at the emergency room and given a prescription, although Plaintiff claims the prescription was not filled. Plaintiff was sent back to the jail that same night or early the next morning but returned to the hospital later that evening for surgery the next morning – July 9, 2004.  The night before surgery, while he was in the hospital, the bite

---

[1]See Ex. D-1 and D-2 to Pl.'s Dep.

[2]The Court notes that, although Defendants requested Plaintiff to file Officer Joiner's deposition, Plaintiff has not done so.  See Docket No. 24.  The Court is therefore relying on the Defendants' statement of facts regarding the testimony and Plaintiff's lack of any response thereto.

supposedly burst.  Just before surgery, Plaintiff was released from custody.  Plaintiff was

discharged from the hospital on July 12, 2004.  Plaintiff claims that the site of the purported

second spider bite has not completely healed and still causes him occasional pain.  Plaintiff

has no symptoms and the pain does not interfere with his daily living or capabilities.

### SUMMARY JUDGMENT STANDARD OF REVIEW

Summary Judgment is appropriate when the pleadings, depositions and affidavits

submitted by the parties show no genuine issue of material fact exists and the movant is

entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c).  The Supreme Court has

explained that the moving party's burden may be discharged "by showing . . . that there is

an absence of evidence to support the nonmoving party's case."  Celotex Corp. v. Catrett,

477 U.S. 317, 325 (1986).  Summary judgment is appropriate against

> A party who fails to make a showing sufficient to establish the existence of an
> element essential to that party's case, and on which that party will bear the
> burden of proof at trial.  In such a situation, there can be "no genuine issue as
> to any material fact," since a complete failure of proof concerning an essential
> element of the nonmoving party's case necessarily renders all other facts
> immaterial.  The moving party is "entitled to judgment as a matter of law"
> because the nonmoving party has failed to make a sufficient showing on an
> essential element of her case with respect to which she has the burden of proof.

Id. at 322-23.

### PLAINTIFF'S CLAIMS

As an initial matter, neither the Peach County Sheriff's Office nor the Peach County

LEC is an entity capable of being sued.  Robinson v. Hogansville Police Dep't, 159 Fed.

Appx. 137, 138 (11th Cir. 2005) (citations omitted).  The claims against those entities are

5

therefore dismissed.  Because the legal analyses of Plaintiff's remaining claims produce the same result whether they are analyzed as against the Sheriff individually or officially or against the County or some other entity, the Court will address the remaining claims together.

Plaintiff cannot rely upon the theory of respondeat superior to hold the Sheriff or County liable for his claims.  Rather, the Sheriff and/or the County are liable only if the execution of some County policy or custom inflicted the injury alleged, or if the Sheriff personally participated in or oversaw a constitutional deprivation.  Instead, to impose § 1983 liability on a municipality, Plaintiff must show:  (1) that his constitutional rights were violated; (2) that the Sheriff/County had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the alleged violation.  McDowell v. Brown, 392 F.3d 1283, 1289-90 (11th Cir. 2004) (citations omitted).  A municipality may be "held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality.  This prevents the imposition of liability based upon an isolated incident.  Rather, the incident must result from a demonstrated practice."  Id. at 1290 (citations omitted).  The alleged deprivations must have been carried out with deliberate indifference to its known or obvious consequences.  Id. at 1291 (citation omitted).  Isolated incidents, however unfortunate, do not demonstrate evidence of a "persistent" or "widespread" policy that would result in a constitutional violation.

In McDowell, the plaintiff claimed he was injured by a county policy of inadequate budgeting that led to understaffing a medical transport service for inmates. The Eleventh

Circuit acknowledged the plaintiff's constitutional right to medical care had been violated under the facts of that case but refused to impose liability on the county because the plaintiff could point to no pattern or practice of injuries resulting from understaffing.  Id. at 1289, 1291-92.  The plaintiff could show only one such instance – the instance in which he was injured.  Accordingly, the plaintiff failed to show the county had a deliberate intent to deny inmates medical care through a pattern or practice of under-budgeting and understaffing that it knew would cause a denial of timely medical care. Id. at 1292-93.

Likewise, Plaintiff Coleman cannot establish liability for his alleged constitutional deprivations.  First, unlike the plaintiff in McDowell, there is nothing in the record showing Plaintiff actually suffered a constitutional deprivation.  "Medical treatment violates the Eighth Amendment only when it is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.  To show an objectively serious deprivation of medical care, an inmate must demonstrate (1) an objectively serious medical need that, left unattended, poses a substantial risk of serious harm and (2) that the response made by public officials to that need was poor enough to constitute 'an unnecessary and wanton infliction of pain,' and not merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law.'" Salas v. Tillman, 162 Fed. Appx. 918, 921 (citations omitted).  Plaintiff failed to show these factors.  First, there is no evidence of an objectively *serious* medical need.  The worst he was experiencing was burning and stinging.  Second, Plaintiff did not allege an objectively insufficient response to that need.  Plaintiff submitted a request that contained no indicia of an emergency.  The

7

second time he requested medical assistance, the next day, Plaintiff was taken to see the doctor.  Third, there is absolutely no evidence of any subjective awareness by any officer of facts signaling a serious medical need.  Finally, the required action was performed - Plaintiff was taken to the hospital where surgery was performed, resulting in his release six days prior to his scheduled release date.  In this one, isolated case the shift supervisor obtained authorization for Plaintiff's treatment and provided transportation so that Plaintiff could receive the treatment.  The officers' response to Plaintiff's request for medical attention was not so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness.  Plaintiff offered no evidence that his course of treatment would have been any different had he received immediate medical attention.  The minimal delay in medical treatment did not cause Plaintiff any deprivation of a constitutionally protected right.  Nor has Plaintiff offered any evidence of a pattern of delay in medical treatment that would put the Sheriff/County on notice that its practices were potentially unconstitutional.

Based on the foregoing, the Sheriff and the County are shielded from liability because Plaintiff failed to establish a constitutional violation and failed to establish that a County policy or practice caused Plaintiff any injury.  Peach County and Sheriff Becham are therefore entitled to summary judgment in their favor.  Because the Court has dismissed all claims over which it had original jurisdiction, it declines to exercise supplemental jurisdiction over the state law claims, see 28 U.S.C. § 1367(c)(3), and those claims are dismissed without prejudice.  Defendants' motion for summary judgment is GRANTED and judgment shall be

entered in the Defendants' favor.

**SO ORDERED this 15th day of August, 2006.**


**S/**
**WILBUR D. OWENS, JR.**
**UNITED STATES DISTRICT JUDGE**